**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| WILLIAM SCHATZMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N24C-01-071-EMD CCLD |
| | ) | |
| MODERN CONTROLS, INC. and | ) | |
| MICHAEL S. PEET, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Submitted: June 20, 2024
Decided: September 20, 2024

*Upon Defendants' Motion to Dismiss*
***GRANTED in part and DENIED in part***

David G. Culley, Esquire, Tybout, Redfearn & Pell, Wilmington, Delaware. *Attorneys for Plaintiff William Schatzman.*

Kevin A. Guerke, Esquire, Michael P. Stafford, Esquire, Elise W. Wolpert, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. *Attorneys for Defendants Modern Controls, Inc. and Michael S. Peet.*

**DAVIS, J.**

## I. INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the Court. Plaintiff William Schatzman ("Schatzman") alleges that his former employer, Defendant Modern Controls, Inc. ("Modern Controls" or the "Company") and its President and Chief Executive Officer Michael S. Peet ("Peet" and, together with Modern Controls, "Defendants") are liable for breach of contract, breach of the implied covenant of good faith and fair dealing,

tortious interference with contract, and conversion in connection with Mr. Schatzman's termination in 2023.

Mr. Schatzman filed his Complaint on January 10, 2024.[1] Defendants filed a Motion to Dismiss all claims on February 27, 2024 (the "Motion").[2] Mr. Schatzman opposes the Motion.[3] The Court held a hearing on the Motion on June 20, 2024. At the conclusion of the hearing, the Court took the Motion under advisement.

For the reasons stated below, the Court **GRANTS** the Motion as to Count I, Count II, Count V, and Count VI. The Court **DENIES** the Motion as to Count III, Count IV, and Count VII.

## II.    RELEVANT FACTS[4]

### A. THE PARTIES

Mr. Schatzman is a Delaware resident.[5] Mr. Schatzman was employed by Modern Controls from 1996 to April 17, 2023.[6]

Modern Controls is a Delaware corporation with its principal place of business in New Castle, Delaware.[7] Modern Controls "specializes in commercial HVAC solutions, mechanical and control systems, and building automation systems."[8] Modern Controls has over 100 employees, operates in Delaware, New Jersey, Pennsylvania, and Maryland, and has an approximate yearly revenue of $40 million.[9]

---

[1] Hereinafter "Compl." (D.I. No. 1).
[2] Hereinafter "MTD" (D.I. No. 9).
[3] Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss (hereinafter "Opp'n") (D.I. No. 15). *See also* Defendants' Reply Brief in Support of Their Motion to Dismiss (hereinafter "Reply") (D.I. No. 16).
[4] Facts are taken from the Complaint, which Defendants "assume the truth of . . . solely for the purposes of this Motion." MTD at 3 n.1.
[5] Compl. ¶ 1.
[6] *Id.* ¶¶ 5, 14.
[7] *Id.* ¶ 2.
[8] *Id.* ¶ 4, MTD at 3.
[9] *Id.*

Mr. Peet is a resident of Delaware.[10]  Mr. Peet is the founder, former owner, and President and Chief Executive Officer of Modern Controls.[11]

## B.  NATURE OF THE DISPUTE

### 1.  *The Supplemental Retirement Plan*

Mr. Schatzman and Modern Controls are parties to the Modern Controls, Inc. Supplemental Retirement Plan ("SRP," the "Plan," or the "Agreement").[12]  The effective date of the SRP is May 16, 2007.[13]  Mr. Peet is signatory to the SRP "'on behalf of the Company' in his representative capacity as Modern Control's President and CEO."[14]

The SRP states that its "purpose . . . is to reward Employee for his loyal and continuous service to the Company by providing supplemental retirement benefits."[15]  To that end, the SRP provides that:

> The Company will contribute to the Plan on behalf of the Employee such amounts from time to time as the Company, in its sole discretion, shall determine. The accumulated value of the Company's contributions, plus earnings and gains (and losses) thereon, shall be known as the Employee's "account balance." The Employee's account balance shall be updated annually to reflect additional Company contributions, earnings and gains (or losses) thereon. The Company shall from time to time provide the Employee with a statement setting forth Employee's current account balance.[16]

Pursuant to Section 5, the SRP is distinguished from an employment contract:

> The adoption, continuance, and/or maintenance of this Plan are not deemed to constitute a contract of employment between Company and Employee, or to be a consideration for, or an inducement or condition of, employment of Employee. Nothing herein contained is deemed to give to Employee the right to be retained in

---

[10] *Id.* ¶¶ 3, 15; *About Us*, MODERNCONTROLS, LLC, https://www.moderncontrols.com/about-us/ (last visited June 14, 2024).
[11] *Id.*
[12] *Id.* ¶ 7 (the Supplemental Retirement Plan (hereinafter "SRP") is D.I. No. 1, Ex. A).  Mr. Schatzman is identified as "Employee" in the SRP.
[13] SRP at 1.
[14] MTD at 4 (quoting SRP at 10).
[15] SRP at Background ¶ B.
[16] *Id.* § 2.

the employ of the Company, or to interfere with the right of the Company to discipline or discharge Employee at any time.[17]

The SRP designates Modern Controls as the "named fiduciary."[18]  As such, Modern Controls has  "the authority to control and manage the operation and administration of this Agreement, and it shall be responsible for establishing and carrying out a funding policy and method consistent with the objectives of this Agreement."[19]

To fund the SRP, Modern Controls:

[W]ill contribute to the Plan on behalf of the Employee such amounts from time to time as the Company, in its sole discretion, shall determine. The accumulated value of the Company's contributions, plus earnings and gains (and losses) thereon, shall be known as the Employee's "account balance." The Employee's account balance shall be updated annually to reflect additional Company contributions, earnings and gains (or losses) thereon. The Company shall from time to time provide the Employee with a statement setting forth Employee's current account balance.[20]

Mr. Schatzman states that regular monthly contributions in the amount of $3,000.00 were paid into the account from May 2007 until 2020.[21]  At the time of Mr. Schatzman's termination, the balance of the account was $735,415.28.[22]

SRP Section 3 provides the mechanism for paying out benefits:

**3.  Benefits.**  The Employee's account balance shall be paid to the Employee as follows:
. . .
b.  If Employee's employment with the Company is terminated other than by reason of Employee's death or disability more than ten (10) years after the Effective Date, the Company shall pay to Employee an amount equal to the Employee's account balance.
. . .

If the payment to the Employee is based on subparagraph (b) above, this amount shall be paid in five (5) consecutive annual installments beginning on the first day

---

[17] *Id.* § 5.
[18] *Id.* § 7.
[19] *Id.*
[20] *Id.* § 2.
[21] Compl. ¶ 10.
[22] *Id.*; MTD at 6.

4

of the month following the month in which Employee's employment with the Company is terminated . . . The amount of each annual installment shall be determined by applying a formula to the account balance in which the numerator is the number one and the denominator is the number of remaining installments to be paid. The Company may, in the Company's sole discretion, accelerate the payments to the Employee or the Employee's designated beneficiary, including the payment of a lump sum . . . .[23]

Section 3(g) provides "an additional incentive":[24]

g. If the Company is sold to anyone other than Employee while Employee is employed by the Company, Employee shall be entitled to receive ten percent (10%) of the net proceeds of sale. Employee shall be entitled to receive Employee's share of the net proceeds as and when payments are received by the Seller, and in the same manner as payments are received by the Seller.[25]

The Complaint alleges that Mr. Schatzman's "reasonable interpretation of these provisions [is] that he shall become entitled to a 10% share of the net proceeds of a sale of the Company when said sale takes place to 'anyone other than himself.'"[26] Modern Controls maintains that if Mr. Schatzman "was not employed at the time of a sale of Modern Controls, he was not entitled to any proceeds from a sale."[27]

Finally, Section 4(a) of the SRP provides:

In no event shall any employee, officer, director, or stockholder of the Company be liable to any individual or entity on account of any claim arising by reason of the Plan provisions or any instrument or instruments implementing its provisions, or for the failure of any employee, beneficiary or other individual or entity to be entitled to any particular tax consequences with respect to the Plan or any credit or payment thereunder.[28]

---

[23] SRP § 3(b).
[24] Compl. ¶ 12.
[25] SRP § 3(g).
[26] Compl. ¶ 12.
[27] MTD at 4.
[28] SRP § 4(a).

## 2. *Plaintiff's Employment and Termination*

Modern Controls hired Mr. Schatzman in 1996 as a service technician.[29] At the time of termination in April 2023, Mr. Schatzman was the company's Vice President of Operations and Chief Operating Officer.[30]

Mr. Schatzman characterizes his employment as "loyal and continuous" and notes that, prior to the events leading to his termination, Modern Controls had never taken disciplinary action against him.[31] However, Modern Controls alleges that several employees lodged complaints of harassment and defamation against Mr. Schatzman in the spring of 2023.[32] On April 3, 2023, Modern Controls' CEO John DiGregorio informed Mr. Schatzman of the complaints and directed him to stay away from the office pending a two-week internal investigation.[33] Mr. Schatzman denied, and continues to deny, any allegations of harassment or defamation.[34]

At the conclusion of the investigation on April 17, 2023, Mr. Schatzman met with Mr. DiGregorio and other members of Modern Controls' leadership.[35] Modern Controls informed Mr. Schatzman that Modern Controls was terminating Mr. Schatzman's at-will employment as a result of the complaints.[36] Mr. Schatzman states that Modern Controls did not provide with details of the complaints or gave Mr. Schatzman the opportunity to "respond or rebut" the allegations.[37]

---

[29] Compl. ¶ 5.
[30] *Id.*
[31] *Id.* ¶ 13.
[32] MTD at 5 (citing Compl. ¶ 13).
[33] *Id.* (citing Compl. ¶ 13).
[34] Opp'n at 3 (citing Compl. ¶ 17).
[35] MTD at 6 (citing Compl. ¶ 14).
[36] *Id.* at 5 (citing Compl. ¶ 14).
[37] Compl. ¶ 14.

Upon termination, Modern Controls presented Mr. Schatzman with a severance package that offered $400,000.00 in additional compensation in exchange for several provisions including non-disclosure and non-compete agreements and a general release of claims against Modern Controls (the "Confidential Severance Agreement and General Release").[38] Mr. Schatzman declined the package.[39]

On May 1, 2023 Mr. Schatzman received a payment of $147,083.06—the first annual installment due under the SRP payment structure "triggered" by Mr. Schatzman's termination.[40]

### 3. The Sale of Modern Controls and Present Litigation

Modern Controls was sold on January 1, 2024, to someone other than Mr. Schatzman.[41] Mr. Schatzman believes this entitles him to 10% of the net proceeds pursuant to SRP Section 3(g).[42] Accordingly, Mr. Schatzman made a formal demand for his share of the proceeds on January 3, 2024.[43] The demand was refused.[44]

### 4. The Litigation

Mr. Schatzman filed his Complaint with this Court on January 10, 2024. Mr. Schatzman asserts seven counts against Defendants:

- Count I: Breach of Contract, alleging that Defendants have breached the SRP "by failing to acknowledge [Mr. Schatzman's] rights to, or to pay to Plaintiff, the benefits set forth in Section 3g. of the Plan."[45]

- Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing as to Plaintiff'[s] Employment Contract, alleging that (i) there is an employment contract between the Parties; and (ii) Defendants have breached the implied covenant

---

[38] *Id.*
[39] *Id.*; MTD at 5.
[40] *Id.* ¶ 18; MTD at 6.
[41] *Id.* ¶ 19; MTD at 8. The purchaser of Modern Controls is not expressly named by any Party and is not relevant to this litigation.
[42] *Id.* ¶¶ 20-21.
[43] *Id.* ¶ 23.
[44] *Id.*
[45] *Id.* ¶¶ 26-30.

inhered in that contract by their actions related to the compensation Mr. Schatzman believes he is owed under Section 3(g).[46]

- Count III: Breach of the Implied Covenant of Good Faith and Fair Dealing as to the SRP, stating a nearly identical claim as Count II but with respect to the SRP specifically.[47]

- Count IV: Tortious Interference with Contract as to Defendant Peet, alleging that as the former owner and eventual seller of Modern Controls, Mr. Peet "orchestrated" Mr. Schatzman's termination with the "sole purpose" of depriving him of his right to compensation under Section 3(g) of the SRP.[48]

- Count V: Conversion as to Defendant Peet, alleging that the percentage of the proceeds to which Mr. Schatzman believes he is entitled is wrongfully in the possession of Mr. Peet.[49]

- Count VI: Declaratory Judgment, asking the Court to issue a declaration that Mr. Schatzman is entitled to a 10% share of the sale proceeds pursuant to SRP Section 3(g); as well as the benefits set forth under SRP Section 3(b) "as those benefits become due and owing under the terms of the Plan."[50]

- Count VII: Fee Shifting, claiming that Defendants' misconduct in these matters "warrants a shifting of fees under the bad faith exception to the American Rule."[51]

Mr. Schatzman seeks compensatory damages for wrongful termination; compensatory damages related to the 10% of the sale proceeds; declaratory relief as described above; punitive damages and fee shifting as described above; and interests and costs.[52]

### III.     STANDARD OF REVIEW

Upon a motion to dismiss under Superior Court Civil Rule 12(b)(6), the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of

---

[46] *Id.* ¶¶ 31-38.
[47] *Id.* ¶¶ 39-46.
[48] *Id.* ¶¶ 59-63.
[49] *Id.* ¶¶ 59-63.
[50] *Id.* ¶¶ 64-69.
[51] *Id.* ¶¶ 70-73.
[52] *Id.* Prayer for Relief at 17-18.

the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[53] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[54]

Although the non-moving party is entitled to all reasonable inferences drawn in its favor on a motion to dismiss, the Court may dismiss a claim "if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."[55]

## IV. DISCUSSION

### A. COUNT I: BREACH OF CONTRACT

To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) a breach by defendant of an obligation pursuant to the contract; and (3) damage to the plaintiff as a result of the defendant's breach.[56]

Contract interpretation is a matter of law to be decided by the Court.[57] "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."[58] Courts "will read a contract as a whole and . . . give each provision and term effect, so as not to render any part of the contract mere surplusage."[59] Courts "will not read a contract to render a provision or term 'meaningless or illusory.'"[60]

---

[53] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[54] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).
[55] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).
[56] *VLIW Tech., LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del. 2003).
[57] *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co*., 616 A.2d 1192, 1195 (Del. 1992).
[58] *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997, at *5 (Del.Ch. Apr. 29, 2005).
[59] *Kuhn Construction, Inc. v. Diamond State Port Corp.,* 2010 WL 779992, *2 (Del. Mar. 8, 2010).
[60] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (quoting *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del.1992) ("Under general principles of contract law, a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless.").

"[I]f the relevant contract language is clear and unambiguous, courts must give the language its plain meaning."[61]  A provision may be considered ambiguous when it is "reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[62] Even so, "[d]ismissal is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law."[63]

Defendants argue that Mr. Schatzman fails to state his claim because the express, unambiguous language of SRP Section 3(g) provides that,

> …if Modern Controls was sold to anyone other than Plaintiff *while Plaintiff was employed by Modern Controls*, then Plaintiff would receive 10% of the net proceeds of the sale.[64]

Because the Complaint states that Mr. Schatzman had been terminated eight months prior to the date of the sale, Defendants contend Mr. Schatzman has no contractual right to claim benefits under Section 3(g).[65]

Moreover, Defendants maintain that the plain meaning of the SRP *does* entitle Mr. Schatzman to benefits—the balance of the retirement account to be paid in five annual installments.[66]  Defendants argue that Mr. Schatzman's receipt of the first installment on May 1, 2023, constitutes evidence that he "is receiving the benefit for which he bargained" and no breach of the SRP has occurred.[67]

---

[61] *Phillips Home Builders v. Travelers Ins. Co*., 700 A.2d 127, 129 (Del. 1997) (internal citation omitted).
[62]  *Rhone-Poulenc,* 616 A.2d at 1196.
[63] *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.,* 691 A.2d 609, 613 (Del. 1996) (emphasis supplied) (citation omitted).
[64] MTD at 8 (emphasis supplied—not in original).
[65] *Id.* at 9 (citing Compl. ¶¶ 14, 19).
[66] *Id.* (citing Compl. ¶¶ 10-11).
[67] *Id.* at 9.

Mr. Schatzman responds that the language of Section 3(g) *is* ambiguous, requiring this Court to allow the breach claim to proceed and to issue the declaratory judgment sought under Count VI.[68] Mr. Schatzman contends:

> [T]here is an alternative reasonable interpretation that fits the language . . . specifically, that the phrase "while the Employee is employed by the Company" was intended to modify the term "Employee" and not the time of the sale of the Company. In other words, the language . . . identifies two categories of potential buyers of the Company—(1) the Employee while employed by the Company, and (2) anyone else. Under this interpretation, if the Company was sold to Plaintiff while an employee he would not be eligible to receive the benefits of [Section 3(g)]; but if sold to "any one other than" Plaintiff he would become entitled to receive the benefits.[69]

Mr. Schatzman argues that his "interpretation makes logical sense given the purpose of the SRP—to provide plaintiff with certain supplemental retirement benefits as a reward for his service to the Company."[70] As such, if "it was Plaintiff himself who purchased the Company, it would make no sense to compensate him with a share of the net proceeds of the sale because he would have, by virtue of the purchase, become the owner of the Company."[71]

Finally, Mr. Schatzman asks that the Court employ the principle of *contra proferentum* to construe this ambiguous provision against the drafter, Modern Controls.[72]

Defendants reply that Mr. Schatzman's interpretation "makes the language 'while the Employee is employed by the Company' meaningless and superfluous and, thus, a violation of

---

[68] Opp'n at 7 (citing *Weiner v. Selective Way Ins. Co*., 793 A.2d 434, 440 (Del. Super. 2002) for the proposition that declaratory relief may be sought to interpret provisions of a contract).

[69] *Id.* at 10.

[70] *Id.*at 11. Mr. Schatzman also argues that his interpretation makes better grammatical sense because the phrase "other than" emphasizes there being two potential buyers.

[71] *Id.*

[72] *Id.* (citing, *inter alia*, *Twin City Fire Ins .Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 630 (Del. 2003) (internal citations and quotations omitted) ("[T]he entity in control of articulating the process" had the obligation "to state clearly the terms of the policy.").

Delaware contract interpretation law."[73]  Defendants present "four possible scenarios" under Mr. Schatzman's interpretation of Section 3(g):

1.  If Modern Controls is sold to a *buyer* other than Plaintiff while Plaintiff *is* employed at the Company, Plaintiff receives 10% of the net proceeds of the sale.

2.  If Modern Controls is sold to *Plaintiff* while Plaintiff *is* employed at the Company, Plaintiff receives no share of the net proceeds.

3.  If Modern Controls is sold to a *buyer* other than Plaintiff while Plaintiff *is not* employed at the Company, Plaintiff receives 10% of the net proceeds of the sale.

4.  If Modern Controls is sold to *Plaintiff* while Plaintiff *is not* employed at the Company, Plaintiff receives 10% of the net proceeds of the sale.[74]

Defendants contend that "Scenario 3" "stands in stark contrast to the purpose of the Plan."  If the "purpose of the Plan is to Reward [the Plaintiff] for his loyal and continuous service, then it would be inconsistent to interpret the Plan to mean that he could still be rewarded with 10% of the net proceeds years after Plaintiff separated from the Company."[75]  Defendants maintain that "[n]o reasonable person reading Section 3(g) could interpret the section to mean that from the date the Plan was implemented in 2007, Plaintiff was guaranteed to receive 10% of the sale proceeds unless Plaintiff bought the Company while still employed."[76]

Defendants argue that "Scenario 4" is "even more unworkable."  The Court notes that this construction does produce the "absurd" result that "the Plaintiff could buy the Company after he is no longer employed and still receive 10% of the net proceeds."[77]

---

[73] Reply at 6.
[74] *Id.* (emphasis supplied).
[75] *Id.* at 7 (citation omitted).
[76] *Id.*
[77] *Id.*

The Court will address Mr. Schatzman's contention that the declaratory judgment sought in Count VI must be issued before Count I can be resolved below. The Court finds that Mr. Schatzman has not presented a reasonable or fairly susceptible alternative interpretation of SRP Section 3(g) that would create an ambiguity. The Court understands that Mr. Schatzman provides an alternative way to have drafted the section, but that does not make SRP Section 3(g) ambiguous.

The Court holds that the language of SRP Section 3(g) is not ambiguous. The meaning of this section is clear—if Modern Controls was sold to a party other than Mr. Schatzman when Mr. Schatzman was employed then Mr. Schatzman would receive 10% of the net proceeds of the sale. The facts are undisputed. Modern Controls did not employ Mr. Schatzman at the time of the sale. Accordingly, Mr. Schatzman is not entitled to 10% of the net proceeds of the sale. The Court will **GRANT** the Motion as to Count I.

## B. COUNTS II AND III: BREACHES OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff "must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff."[78] Further, "[g]eneral allegations of bad faith are not sufficient to survive a motion to dismiss; instead, [the plaintiff] must allege a specific implied contractual obligation and allege how the violation of that obligation denied it the fruits of the [contract]."[79] Finally, "[o]nly when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of, had they thought to negotiate with

---

[78] *Data Centers, LLC v. 1743 Holdings LLC*, 2015 WL 9464503, at *7 (Del. Super. Oct. 27, 2015) (quoting *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 888 (Del. Ch. 2009) (quoting *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)).
[79] *Id.* (quoting *Kuroda*, 971 A.2d at 888).

respect to that matter, may a party invoke the protections of the implied covenant of good faith and fair dealing."[80]

The Delaware Supreme Court warns that the implied covenant of good faith and fair dealing:

> Involves a cautious enterprise, inferring contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated. One generally cannot base a claim for breach of the implied covenant on conduct authorized by the agreement. We will only imply contract terms when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected.[81]

The covenant will not "infer language that contradicts a clear exercise of an express contractual right" or "extend to post contractual rebalancing of the economic benefits flowing to the contracting parties."[82] Rather, the covenant applies "only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result but does not speak directly enough to provide an explicit answer. In the Venn diagram of contract cases, the area of overlap is quite small."[83]

The Supreme Court discussed the interaction between the implied covenant and Delaware's at-will employment doctrine *E.I. DuPont de Nemours and Co. v. Pressman*.[84] The Court noted that the doctrine "provides a heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite."[85] Further, though the doctrine "generally permits the dismissal of employees without cause and regardless

---

[80] *Id.* (citing *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006) (citing *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)).

[81] *Nemec v. Shrader*, 991 A.2d 1120, 1125-26 (Del. 2010) (internal citations and quotations omitted).

[82] *Id.* at 1127-28.

[83] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009).

[84] 679 A.2d 436 (Del. 1996).

[85] *Id.* at 440 (quoting *Merrill v. Crothall–American, Inc.*, 606 A.2d 96, 102 (Del. 1992)).

of motive" the Court held that the implied covenant nevertheless inheres, though the employment

doctrine is broad and the covenant is "narrow and carefully crafted."[86]

Summarized later in *Lord v. Souder*, *Pressman* described four "exclusive" at-will

employment circumstances when the implied covenant may give rise to actionable claims:

> (i) where the termination violated public policy; (ii) where the employer
> misrepresented an important fact and the employee relied "thereon either to accept
> a new position or remain in a present one"; (iii) where the employer used its
> superior bargaining power to deprive an employee of clearly identifiable
> compensation related to the employee's past service; and (iv) where the employer
> falsified or manipulated employment records to create fictitious grounds for
> termination.[87]

Further, under *Pressman*, the conduct of the employer must "constitute an aspect of

fraud, deceit or misrepresentation" in order to constitute a breach of the covenant.[88]

Defendants argue that Mr. Schatzman has failed to state claims for breach of the implied

covenant related to his termination, either "under a non-existent employment contract" in Count

II, nor with respect to the SRP in Count III.[89]  Defendants specifically contend that Mr.

Schatzman's allegations must be dismissed because they do not fall within any of the "narrow

categories" outlined in *Pressman*.[90]

### 1.  *Count II: As to "Plaintiff'[s] Employment Agreement"*

Foundationally, Defendants argue that there is no express employment contract between

Mr. Schatzman and Modern Controls.  Defendants make this argument even though the

Complaint alleges such an agreement exists, and contrary to Mr. Schatzman's invocation of the

implied covenant to fill the "gap" in that agreement (a gap he describes as "no provisions in the

---

[86] *Id*. at 437-38.
[87] *Lord v. Souder*, 748 A.2d 393, 400-01 (Del. 2000) (citing *Pressman*, 679 A.2d, 442-44)).
[88] *Pressman*, 679 A.2d, 440 (internal citation and quotation omitted).
[89] MTD at 9-11.
[90] *Id*. at 10 (citing *Pressman*, 679 A.2d at 437).

employment contract that expressly address or govern the duty of the [Modern Controls] to deal honestly with Plaintiff . . . .").[91]

Defendants acknowledge that Mr. Schatzman is permitted to plead that his breach of the implied covenant claim pertains to two separate agreements as alternative theories; however, Defendants contend that Mr. Schatzman "cannot invoke a non-existent employment contract to create an alternative claim."[92]  Instead, Defendants insist that Mr. Schatzman must rely on the "express terms" of the SRP for "any conceivable basis for recovery of the breach of implied covenant claim . . . ."[93]

Moreover, Defendants argue that Count II "fails to allege an independent basis for recovery" apart from the claim in Count I, contrary to Delaware law.[94]  Defendants quote this Court in *Good v. Moyer*: "[a] court will only consider recovery under an implied contract if there is no express contract which governs the parties' rights and obligations."[95]  Simply stated, Defendants argue that without an employment contract separate from the provisions contained in the SRP, there can be no other claim for breach of the implied covenant.  Therefore, Defendants contend Mr. Schatzman has failed to state a claim in Count II.

---

[91] *Id.* (quoting Compl. ¶¶ 32, 35).

[92] *Id.* at 11-12 (citing *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *8 (Del. Ch. Feb. 3, 2009) ("A right to plead alternative theories does not obviate the obligation to provide factual support for each theory.").

[93] *Id.* at 12.

[94] *Id.*

[95] *Id.* and *id.* n.21; *Good v Moyer*, 2012 WL 4857367, at *5 (Del. Super. Oct. 10, 2012) (quoting *William M. Young Co. v. Bacon*, 1991 WL 89817, at *8 (Del. Super. May 1, 1991)).  *See also id.* (quoting *Moore Bus. Forms v. Cordant Holdings Corp.*, 1995 WL 662685, at *9 (Del. Ch. Nov. 2, 1995)) ("An implied contractual obligation cannot flow from matters expressly addressed in a written contract.").

Mr. Schatzman does not directly address Defendants' contention that there is no employment agreement. Instead, Mr. Schatzman addresses the applicability of the third and fourth *Pressman* exceptions in a subsection entitled "The Employment Contract."[96]

Defendants argue that Mr. Schatzman "concedes there is no express employment contract. There is only the Plan."[97] Moreover, "the Plan is explicitly *not* an employment contract, and it is unreasonable to imply an employment term here."[98] Defendants contend that SRP Section 5 "is dispositive, but Plaintiff does not address it in any way."[99]

The Court holds that, without an express employment contract, Mr. Schatzman can support his argument in Count II. The Court therefore **GRANTS** the Motion as to Count II.

### 2. *Count III: As to the SRP*

Defendants next contend that Mr. Schatzman has failed to allege facts showing the terms of the SRP altered his at-will employment relationship.[100] Defendants state that the express terms of the SRP did not obligate Modern Controls to retain Mr. Schatzman "as an employee so that, at some point, he could earn 10% of the net proceeds."[101] Instead, the SRP "simultaneously disclaims Plaintiff's 'right to be retained in the employ of the Company' and reaffirms Modern Control's right to 'discipline or discharge' Plaintiff at any time."[102]

Defendants highlight that the SRP contains express terms governing Mr. Schatzman's at-will status. As such, Defendants maintain that Mr. Schatzman now seeks to use the implied

---

[96] Opp'n at 13-17. Mr. Schatzman may be asserting that there is an implied employment contract. If so, the implied covenant would most likely not apply. *See, e.g., Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 182 (Del. Ch. 2014) (emphasis added) ("The implied covenant of good faith and fair dealing is the doctrine by which Delaware law cautiously supplies terms to fill gaps in the *express* provisions of a *specific* agreement.").

[97] Reply at 9.

[98] *Id.* at 9-10 (emphasis supplied).

[99] *Id.* at 10 (citing SRP § 5).

[100] MTD at 12.

[101] *Id.* at 12-13.

[102] *Id.* at 13 (quoting SRP § 5).

covenant to "repackage his breach of contract claim as a violation of the duty of good faith and fair dealing."[103] Defendants assert that, in the absence of a contractual right to continued employment, Mr. Schatzman "attempts to invoke the third and fourth *Pressman* exceptions to his at-will employment."[104] Defendants characterize Mr. Schatzman's arguments here as conclusory and "factually unsupportable."[105] Defendants focus on the allegations in paragraphs 36 and 44 of the Complaint, in which Mr. Schatzman "maintains that Modern Controls (1) 'used their superior bargaining power' to deprive Plaintiff of 'clearly identifiable compensation related to his past service' and (2) 'create[d] fictitious grounds' for his termination."[106]

Mr. Schatzman separately insists that the SRP was violated in bad faith. In support, Mr. Schatzman argues that Defendants "terminated his employment in bad faith as part of a larger scheme to deprive him of the benefits provided under Section 3g. of the SRP."[107]

### a. Third Pressman exception: The deprivation of "compensation that is clearly identifiable and is related to the employee's past service."[108]

Defendants contend that Mr. Schatzman "does not seek to recover a benefit that he earned prior to his termination—instead he asks this Court to declare him eligible to receive a benefit for which he did not bargain."[109] Defendants claim that the "contours of clearly identifiable compensation protected by the implied covenant" are described in *Wagenseller v. Scottsdale Memorial Hospital*,[110] an Arizona case "cited with approval by the Delaware Supreme

---

[103] *Id.* at 18 (quoting *Nemec,* 991 A.2d at 1127) ("The implied covenant will not infer language that contradicts a clear exercise of an express contractual right.").

[104] *Id*. at 13. *See also id*. n.22 (citing *Lidya Hldgs. Inc. v. Eksin*, 2022 WL 854688, at *3 n.24 (Del. Ch. Mar. 23, 2022) (arguing that Mr. Schatzman "relies on the same factual allegations to invoke" those two "often conflated" exceptions).

[105] *Id.*

[106] *Id.* (citing Compl. ¶¶ 36, 44).

[107] Opp'n at 25.

[108] *Pressman*, 679 A.2d at 442 (internal citation and quotations omitted).

[109] MTD at 14.

[110] 710 P.2d 1025 (Az. 1985).

Court in *Pressman . . . .*"[111] *Wagenseller* cites, for example, sales commissions already earned as protected benefits; whereas tenure necessary to secure pension and retirement benefits would not be protected.[112] Defendants contend that Mr. Schatzman now attempts to secure a right to similarly unprotected future benefits—"a retirement benefit that did not vest during the term of his employment."[113]

Mr. Schatzman responds that Defendants' argument "goes too far" because "no Delaware case has held that the lost benefit must have been 'earned' before the exception applies and Defendants have not cited to any."[114] Mr. Schatzman argues that, in citing *Wagenseller*, the *Pressman* court did not adopt its language but rather "opt[ed] instead to simply link the benefit at issue to the employee's *past service*."[115]

Mr. Schatzman has failed to allege facts to claim the third *Pressman* exception. The "benefit at issue" is 10% of the sale proceeds. Mr. Schatzman contends that he is entitled to that benefit under the alternative theories of: (a) his interpretation of SRP Section 3(g), whereby he is entitled to the proceeds because he did not purchase the Company while he was employed by it; or (b) Defendants' interpretation of SRP Section 3(g), whereby Mr. Schatzman is entitled to relief because his bad-faith termination was effectuated in order to deprive him of the opportunity to receive the sale proceeds as an employee at the time of the sale.

Under either theory, the issue is whether the benefit was "earned" in the sense of whether it had "vested" or was "triggered"—not whether it relates to Mr. Schatzman's past service. The

---

[111] MTD at 14.
[112] *Wagenseller*, 710 P.2d at 1041.
[113] MTD at 15.
[114] Opp'n at 15 ("Moreover, it is not at all clear what 'earned' means in this context.").
[115] *Id.* (emphasis supplied).

answer turns on the interpretation of SRP Section 3(g). It is unclear how Defendants' "superior bargaining power" factors in the analysis, or how this differentiates the claim from Count I.

### b. *Fourth Pressman exception: The falsification or manipulation of employment records to create a fictitious ground for termination.*[116]

Defendants state that Mr. Schatzman has failed to plead facts invoking the fourth *Pressman* exception because his "conclusory" allegations are analogous to cases in which Delaware courts have declined to invoke the implied covenant.[117] Defendants highlight *Gilliland v. St. Joseph's at Providence Creek*[118]—finding that a terminated executive director was in a position to defend himself from internal accusations of which he was aware—and *Lidya Holdings Inc. v. Eskin*[119]—holding that a former executive "was not powerless to defend himself" against a termination following an investigation into a "known and vetted dispute."[120]

Defendants argue that, like the terminated employees in *Gilliland* and *Lidya*, Mr. Schatzman was a company leader who knew he was under investigation and was terminated after an investigation.[121] Defendants quote *Gilliland*:

> When employers are faced with accusations among its employees of "he said, she said", the employer should be given the right to resolve the disputes in the employer's best interest by exercising its right to end the employment relationship. The employer should have the latitude to discharge without having a jury "second guess" the "correctness" of the employer's decision. To hold otherwise would substantially erode the concept of employment at will.[122]

Defendants assert that Modern Controls terminated Mr. Schatzman "[o]nly after its investigation and based on its review of the harassment complaints against" him.[123] Defendants

---

[116] *Pressman*, 679 A.2d at 443-44.
[117] MTD at 14.
[118] 2006 WL 258259 (Del. Super. Jan. 27, 2006).
[119] 2022 WL 854688.
[120] MTD at 16-17.
[121] *Id.* at 17 (citing Compl. ¶¶ 5, 13-14).
[122] *Gilliland*, 2006 WL 258529 at *8.
[123] MTD at 17.

argue it is not for the factfinder now to "second guess" Modern Controls' decision and "erode the concept of employment at will."[124]

Mr. Schatzman takes issue with Defendants' reliance on *Gilliland* and *Lydia Holdings*, stating those cases are inapposite because, unlike Mr. Schatzman, the terminated parties there were informed of the specific allegations against them and had the opportunity to defend themselves.[125] Mr. Schatzman notes that the Complaint alleges that Mr. Schatzman "was given no information about the accusations against him, was never invited to participate in the investigation, and was never granted a forum in which to defend himself before his employment was terminated."[126]

Moreover, at this stage of the proceedings, Mr. Schatzman responds that "it is reasonable to infer that the record leading to his termination was falsified or manipulated" given the facts alleged, "which are assumed to be true . . . ."[127] On this point, recent Court of Chancery cases cited by Mr. Schatzman are instructive.

In *Smith v. Scott*, an executive subject to both an implied at-will employment agreement and other express agreements containing pertinent "for cause" provisions was terminated.[128] The executive alleged that his termination was a bad faith violation of the implied covenant because he was fired based on false allegations made with the "sole motivation to take his Vested Interests without compensation."[129] The defendants argued that the executive's "oral at-will employment agreement is contextualized by the [express agreements], and those agreements

---

[124] *Id.* at 18 (quoting *Gilliland*, 2006 WL 258529 at *8).
[125] Opp'n at 17.
[126] *Id.*
[127] *Id.* at 16-17.
[128] *Smith v. Scott*, 2021 WL 1592463, at *7 (Del. Ch. Apr. 23, 2021).
[129] *Id.*

clearly define the meaning and implications of a firing for 'cause,' leaving no room for the [Implied] Covenant to operate."[130]

The Court of Chancery found that, at the motion to dismiss stage, the executive had nevertheless adequately stated a claim for breach of the covenant.[131] Citing *Sheehan v. AssuredPartners*, the Court of Chancery held that even where express agreements had "laid out the process by which employment could be terminated for 'cause,' that process did not address (or excuse) instances where the termination was carried out in 'bad faith.'"[132] Moreover, *Sheehan* held that, "[t]o survive a motion to dismiss [plaintiffs] only must allege that the termination decision was motivated by an improper purpose."[133]

Defendants counter, arguing that, unlike the parties in the cases cited by Mr. Schatzman, the Complaint fails to allege with particularity the "fraud, deceit, or misrepresentation" necessary to invoke a breach of the implied covenant in the at-will employment context.[134] Yet *Sheehan* addresses this point directly. In pleading the alleged tortfeasor's "improper purpose,"

> a plaintiff need not plead knowledge or state of mind with particularity, because "any attempt to require specificity in pleading a condition of mind would be unworkable and undesirable. The purpose of Rule 9(b) is to provide the defendant with "detail sufficient to apprise [her] of the basis for the claim.[135]

Mr. Schatzman has adequately alleged the improper purpose necessary to state a claim for breach of the implied covenant with respect to the SRP. The Court **DENIES** the Motion as to Count III.

---

[130] *Id.* at *8.
[131] *Id.*
[132] *Id.* at *7 (citing *Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, at *11 (Del. Ch. May 29, 2020)).
[133] *Sheehan,* 2020 WL 2838575, at *11.
[134] Reply at 11 (citing Del. Super. Ct. Civ. R. 9(b)) ("In all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.").
[135] *Sheehan*, 2020 WL 2838575, at *11 (quoting *MHS Capital LLC v. Goggin*, 2018 WL 2149718, at *9 (Del. Ch. May 10, 2018)).

## C. COUNT IV: TORTIOUS INTERFERENCE WITH CONTRACT AS TO DEFENDANT PEET

In Delaware, the elements of a claim for tortious interference with contract are: "(1) a contract, (2) about which defendant knew, *and* (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury."[136] Based on the "rudimentary" notion that parties to a contract cannot be liable for both breaching that contract and inducing the breach, by "slight extension it has been held that employees or directors of a contracting corporation cannot be held personally liable for inducing a breach of contract by their corporations *when they act within their role*."[137]

Moreover:

> Delaware law presumes that a corporate officer's actions that cause the corporation to breach a contract were taken for the corporation's benefit. Accordingly, in order to state a claim for tortious interference against a corporate officer, a plaintiff must plead adequately that the officer (1) was not pursuing legitimate profit-seeking activities of the affiliated enterprise in good faith, or (2) was motivated by some malicious or other bad faith purpose to injure the plaintiff. This legal rule derives from the business judgment rule's presumption that officers and directors act loyally and in good faith when making business decisions in their fiduciary capacity.[138]

A complaint against an individual officer may not "rely exclusively on actions taken by the corporate" entity and must instead "at a minimum, describe affirmative actions taken by that individual directing, ordering, ratifying, approving or consenting to the tort. Requiring that such

---

[136] *Bhole, Inc. v. Shore Invs*., Inc., 67 A.3d 444, 453 (Del. 2013) (quoting *Irwin & Leighton, Inc. v. W.M. Anderson Co*., 532 A.2d 983, 992 (Del.Ch.1987) (emphasis supplied)).

[137] *Shearin v. E.F. Hutton Grp., Inc*., 652 A.2d 578, 590 (Del. Ch. 1994) (internal citations omitted) (emphasis added).

[138] *Am. Bottling Co. v. Repole*, 2020 WL 7787043, at *6 (Del. Super. Dec. 30, 2020) (internal citations and quotations omitted).

actions be specifically identified in the pleadings plays an important role in preserving limited corporate liability."[139]

Defendants contend that Mr. Schatzman has failed to satisfy the third and fourth prongs of a tortious interference claim against Mr. Peet. Defendant stress that Mr. Peet was acting within the scope of his authority and in pursuit of Modern Controls' legitimate profit-seeking activities when he "accepted the decision to terminate" Mr. Schatzman.[140]

First, Defendants argue that the Complaint admits Mr. Peet "was acting within the course and scope" of his employment "[a]t all times relevant hereto . . . ."[141] Defendants note that the Complaint describes the events leading to Mr. Schatzman's termination as being "conceived, directed, ordered and ratified by Mr. Peet as owner, President and Chief Executive Officer of the Company."[142] Defendants contend that such "factual allegations are fatal to any claim that Mr. Peet was pursuing his own self-interest."[143]

Defendants maintain that Mr. Schatzman fails to show bad faith on the part of Mr. Peet specifically, instead "relying on actions taken by Modern Controls to attribute a tort to Mr. Peet."[144] Instead, Defendants contend that Mr. Schatzman must "describe affirmative actions" taken by Mr. Peet as an individual.[145] Defendants claim that Mr. Schatzman has failed to do so and instead "simply recites the events leading up to his termination and argues that Mr. Peet 'conceived, directed, ordered and ratified' his termination without explaining what affirmative steps Mr. Peet took or how Mr. Peet personally committed a tort."[146]

---

[139] *Gassis v. Corkery*, 2014 WL 3565418, at *5 (Del. Ch. July 21, 2014), *aff'd*, 113 A.3d 1080 (Del. 2015) (internal citations and quotations omitted).
[140] MTD at 20.
[141] *Id.* at 21 (quoting Compl. ¶ 6).
[142] *Id.* (quoting Compl. ¶ 15).
[143] *Id.*
[144] *Id.*
[145] *Id.*
[146] *Id.* (quoting Compl. ¶ 15).

Defendants reject Mr. Schatzman's claim that Mr. Peet's motive was "to reserve for himself alone, and for his own personal benefit, the right to the entire proceeds of the sale."[147] Rather, Defendants contend that Mr. Peet was pursing the legitimate profit-seeking motive of Modern Controls: "to protect Modern Controls from becoming vicariously liable for Plaintiff's harassment."[148] Defendants argue that because Mr. Peet was acting on behalf of Modern Controls, and because his actions were motivated by the legitimate goals of Modern Controls, his conduct is protected by the business judgment rule and Mr. Schatzman has failed to plead facts to the contrary.[149] Therefore, Defendants contend Count III should be dismissed.[150]

Mr. Schatzman responds that he has stated a valid claim in three respects. First, Mr. Schatzman states that he has pled Mr. Peet's interference was improper under the factors listed in the Restatement (Second) of Torts Section 767 and cited by our Supreme Court.[151] Those factors are:

> (a) [T]he nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.[152]

Applying those factors to his allegations, Mr. Schatzman states that Mr. Peet's actions were not justified because:

> (a) [T]he conduct was the termination of Plaintiff's employment through wrongful means; (b) Peet's motive was to deny Plaintiff the benefits due him under Section 3g. of the Plan, while augmenting his own personal gain through the sale of the Company; (c) the interest of Plaintiff was in continuing his employment so as to secure the benefits provided by Section 3g.; (d) Peet sought to advantage himself by denying Plaintiff the benefits due hm under Section 3g.; (e) there are no social

---

[147] *Id.* at 22 (quoting Compl. ¶ 53).
[148] *Id.*
[149] *Id.*
[150] *Id.*
[151] Opp'n at 26 (citing, *e.g.*, *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.,* 49 A.3d 1168, 1174 (Del. 2012)).
[152] RESTATEMENT (SECOND) OF TORTS § 767 (1979).

interests that would protect Peet's freedom of action in improperly terminating Plaintiff's employment; (f) it is alleged that at the time of Peet's interference he was contemplating a sale of the company, which in fact occurred approximately eight months later; and (g) the relations between the parties are that of an employer and employee.[153]

Next, Mr. Schatzman argues "[a]lternatively" that Mr. Peet's intentional interference was improper in the sense that Mr. Peet "made it impossible for Plaintiff to comply with his purported obligation to remain employed with the Company."[154] Mr. Schatzman claims Mr. Peet did so by wrongfully terminating Mr. Schatzman's employment.[155]

Finally, Mr. Schatzman posits that Mr. Peet's actions were not privileged because they exceeded the scope of Mr. Peet's authority.[156] Mr. Schatzman cites examples where Delaware courts have "found grounds for personal liability 'when the corporate agent responsible for the wrongdoing was acting solely to advance his own personal financial interest, rather than that of the corporation itself.'"[157] Moreover, Mr. Schatzman avers that "the question of whether an employee has exceeded the scope of his employment is generally a question for the jury."[158] Indeed, this Court has held that a more fully developed record may be necessary to decide whether or not a party exceeded the scope of his or her employment, and the tortious interference claim should therefore survive a motion to dismiss.[159]

---

[153] Opp'n at 27.

[154] *Id.*

[155] *Id.* at 28 (citing *Allen Fam. Foods, Inc. v. Capitol Carbonic Corp.*, 2011 WL 1205138, at *6 (Del. Super. Mar. 31, 2011) (quoting RESTATEMENT (SECOND) OF TORTS) ("Section 766A is intended to address situations where 'the plaintiff is unable to obtain performance of the contract by the third person because he has been prevented from performing his part of the contract and thus from assuring himself of receiving the performance by the third person.'").

[156] *Id.* at 28-29 (citing *In Re CVR Refining LP Unitholder Litigation Consolidated*, 2020 WL 506680, at *16 (Del. Ch. Jan. 31, 2020); *Shearin*, 652 A.2d at 590).

[157] *Id.* at 29 (quoting *In Re CVR*, 2020 WL 506680, at *16); (citing *Nye v. Univ. of Delaware*, 2003 WL 22176412, at *5–6 (Del. Super. Sept. 17, 2003); *Smith v. Hercules, Inc.*, 2002 WL 499817, at *4 (Del. Super. Mar. 28, 2002)).

[158] *Id.* (citing *West v. Access Control Related Enterprises, LLC*, 2019 WL 2385863, at *5 (Del. Super. June 5, 2019) (summarizing *Smith v. Hercules*, 2002 WL 499817)).

[159] *See, e.g., West v. Access Control Related Enterprises, LLC*, 2019 WL 2385863, at *5 (Del. Super. June 5, 2019).

Defendants reply that Mr. Schatzman "concedes" the fact that "Mr. Peet's actions 'were conceived, ordered and ratified by Mr. Peet as owner, President and Chief Executive Officer of the Company' and, therefore, were taken within the scope of his employment."[160] Defendants contend, therefore, that the argument this must be decided by a jury is "entirely irrelevant . . . ."[161]

Defendants also argue that Mr. Peet was not a "stranger to the contract" for purposes of tortious interference.[162] This appears to be correct, however, it does not negate the need for Mr. Peet to have been acting within his authority to escape liability:

> [I]n a tortious interference claim, an agent for a party to a contract cannot . . . interfere with her principal's own contract, provided that the agent does not exceed the scope of her authority. In other words, the party that tortiously interferes with a contract must be a "stranger" to the contract itself as well as a stranger to the business relationship underpinning the contract.[163]

The Court finds that Mr. Schatzman has pled facts sufficient to survive a motion to dismiss. Drawing all reasonable inferences in Mr. Schatzman's favor, it is conceivable that Mr. Peet was improperly motivated by his own financial interest in terminating Mr. Schatzman while the sale of Modern Controls was contemplated but before it was completed. The question of whether those actions were within the scope of his agency or not is a fact-intensive question. Accordingly, the Court will **DENY** the Motion as to Count IV.

## D. COUNT V: CONVERSION AS TO DEFENDANT PEET

Conversion is "any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it."[164] However, "Delaware law

---

[160] Reply at 14 (quoting Compl. ¶ 15).
[161] *Id.*
[162] *Id.* (Though Defendants address it here, Mr. Schatzman's argument that Mr. Peet was a stranger to the contract is made in support of his claim in Count VI for Conversion).
[163] *Anthony v. Bickley*, 2014 WL 3943687, at *3 (Del. Super. Aug. 8, 2014), *aff'd*, 113 A.3d 1080 (Del. 2015) (internal citations and quotations omitted).
[164] *Kuroda,* 971 A.2d at 889 (quoting *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933)).

does not recognize a cause of action for the conversion of money."[165]  A "narrow exception"

recognized in other jurisdictions—but not addressed by Delaware courts—"allows a claim for

conversion of money only when it can be described or identified as a specific chattel, but not

where an indebtedness may be discharged by the payment of money generally."[166]

Further, where a "plaintiff's claim arises solely from a breach of contract, the plaintiff

'generally must sue in contract, and not in tort.'"[167]  To assert a tort claim along with the contract

claim, there must be an allegation that an independent legal duty was violated separate from the

duty imposed by contract.[168]

Defendants contend that Mr. Schatzman fails to state a claim for conversion for three

reasons: (1) there can be no conversion of "property" Mr. Schatzman never owned nor has a

right to own; (2) even if Mr. Schatzman's interest in the proceeds of the sale were legitimate, the

claim would not meet the narrow exception of being "specific chattel"; and (3) the claim is

duplicative of Mr. Schatzman's breach of contract claim because it is not based on an

independent legal duty.[169]

Mr. Schatzman responds that his claim is "not necessarily for money exclusively."[170]  Mr.

Schatzman "remind[s]" the Court of SRP Section 3(g)'s phrasing that "Employee shall be

entitled to receive Employee's share of the net proceeds *as* and when payments are received by

the Seller, *and in the same manner as payments are received by the Seller*."[171]  Mr. Schatzman

contends that at this stage of the proceedings, "and without the benefit of discovery, it is not

---

[165] *DeFranco v. Pordham*, 2015 WL 4751217, at *2 (Del. Super. Aug. 11, 2015) *See also id*. n.17 (collecting authorities).

[166] *Kuroda*, 971 A.2d at 890 (internal citation and quotations omitted).

[167] *Id.* at 889 (quoting *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super. July 25, 2007)).

[168] *Kuroda*, 971 A.2d at 889.

[169] MTD at 24-25.

[170] Opp'n at 30.

[171] *Id.* at 30-31 (quoting SRP § 3(g) (emphasis supplied—not in original)).

known what form the consideration paid for the business took or will take."[172]  Mr. Schatzman argues that it is "reasonably conceivable that instead of, or in addition to, cash or money the sale of the business could involve the exchange of stock, stock options, or other forms of tangible property apart from money."[173]

In addition, Mr. Schatzman contends that Count V is not duplicative of Count I because Mr. Peet is not a party to the SRP at issue in Count I.[174]  Mr. Schatzman argues that Mr. Peet received the proceeds from the sale of Modern Controls as an individual, and that it is his retention of the 10% of these proceeds to which Mr. Schatzman claims to be entitled that constitutes the conversion.[175]

Defendants reply that only Mr. Schatzman's Opposition Brief, and not his Complaint, makes the claim for anything other than "the monetary proceeds from the sale of the Company."[176]  Because the "Court is 'limited to the facts pled in or appropriately incorporated into the operative complaint; new facts or facts expanding those contained in the complaint are not considered.'"[177]

The Court finds that it is implausible to consider Mr. Schatzman's claim as one for anything other than money.  Moreover, it is unclear how the claim for conversion is not duplicative of the claim for breach of contract—even if Mr. Schatzman could prove that Mr. Peet was a "stranger to the contract" in that Mr. Peet received the proceeds as an individual.  The claims are based on the same allegedly tortious conduct and seek identical relief, but apparently from different defendants.  The Motion is **GRANTED** as to Count V.

---

[172] *Id.* at 31.
[173] *Id*.
[174] *Id.*
[175] *Id*.
[176] Reply at 17 (quoting Compl. ¶¶ 60-61).
[177] *Id.* at 17-18 (quoting *Orman v. Cullman*, 794 A.2d 5, 28 n.59 (Del. Ch. 2002)).

## E. COUNT VI: DECLARATORY JUDGMENT

Declaratory judgments are statutory actions that are "meant to provide relief in situations where a claim is ripe but would not support an action under common-law pleading rules."[178] A:

> Declaratory judgment permits parties to avoid the accrual of avoidable damages to one not certain of his rights and would strongly affect present behavior, have present consequences and resolve a present dispute. A declaratory judgment is inappropriate solely to adjudicate past conduct. The real value of the judicial pronouncement is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*.[179]

Because declarations provide relief where another remedy is otherwise unavailable, "a declaratory claim may not duplicate a properly-pleaded affirmative count."[180] A declaratory count that 'does not add anything' will be dismissed."[181]

Defendants contend that Count VI should be dismissed because the claim is unripe, moot, and duplicative of the breach of contract claim.

First, Defendants argue that there is no present dispute requiring the Court to declare that Mr. Schatzman is entitled to relief under SRP Section 2(b).[182] Defendants state that Mr. Schatzman has already received a payment pursuant to the SRP, and thus there is no controversy to be settled by a declaratory judgment.[183] Next, Defendants contend that the "the issue is moot because Sections 3(b) and 3(g) are mutually exclusive":

> Plaintiff can only conceivably recover under one of these provisions, not both. Either Plaintiff was terminated by Modern Controls, triggering payment under

---

[178] *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *29 (Del. Ch. Nov. 26, 2014), *judgment entered*, (Del. Ch. 2014).

[179] *Delaware State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374 (D. Del. 2008) (internal citations and quotations omitted; cleaned up) (emphasis supplied).

[180] *Intermec IP Corp. v. TransCore*, 2021 WL 3620435, at *25 (Del. Super. Aug. 16, 2021) (citing *US Ecology, Inc. v. Allstate Power Vac, Inc*., 2018 WL 3025418, at *10 (Del. Ch. June 18, 2018), *aff'd*, 2019 WL 24460 (Del. Jan. 17, 2019); *Trusa v. Nepo*, 2017 WL 1379594, at *8 n.71 (Del. Ch. Apr. 13, 2017); *Great Hill*, 2014 WL 6703980, at *29; *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *20 (Del. Ch. Sept. 18, 2014)).

[181] *Intermec IP Corp.,* 2021 WL 3620435, at *25 (quoting *ESG Cap. Partners II, LP v. Passport Special Opportunities Master Fund, LP*, 2015 WL 9060982, at *15 (Del. Ch. Dec. 16, 2015)).

[182] MTD at 26 (citing Compl. ¶ 68).

[183] *Id*. The February 27, 2024 Motion notes that a second payment is "not due until May 1, 2024."

Section 3(b), or he was still employed at the time of the sale, triggering payment under Section 3(g). In that regard, Plaintiff is quite certain of his rights under the Plan—he accepted the first installment pursuant to Section 3(b).[184]

Finally, Defendants argue that Mr. Schatzman asks for a declaration using "an almost word-for-word recitation of his breach of contract claim."[185] As such, Defendants contend that Count VI asks relief duplicative of Count I and should be dismissed.[186]

In response, Mr. Schatzman argues that his request for a declaratory judgment is not duplicative of his claim for breach of contract, but rather that the declaration in Count VI is necessary to resolve Count I.[187] Moreover, Mr. Schatzman contends that, in the event the Court were to find that he "must have been employed by the Company at the time of the sale" in order to receive 10% of the proceeds now, "then Plaintiff pleads, alternatively, that his employment was wrongfully terminated for the sole purpose of depriving him of those benefits."[188]

Though Mr. Schatzman is correct that "declaratory relief may be sought to determine provisions of a contract," here he asks the Court to issue a declaration that would provide the same relief as either Count I (because SRP Section 3(g) entitles him to 10% of the sale proceeds); or Counts II and III (because even though SRP Section 3(g) does *not* entitle him to 10% of the proceeds, he was nevertheless terminated in bad faith violation of the implied covenant inhered in his "employment contract" and the SRP). As such, Mr. Schatzman's request "does not add anything" to his other affirmatively pled claims and should be dismissed as duplicative.[189]

For these reasons, the Court **GRANTS** the Motion as to Count VI.

---

[184] *Id.*
[185] *Id.* at 26-27 (comparing Compl. ¶¶ 29 and 67).
[186] *Id.* at 27.
[187] Opp'n at 7.
[188] *Id.* at 6. Mr. Schatzman here claims he has therefore effectively pled his tortious interference claims.
[189] *Intermec IP Corp.,* 2021 WL 3620435, at *25 (quoting *ESG Cap. Partners II,* 2015 WL 9060982, at *15).

## F. COUNT VII: FEE SHIFTING

Delaware follows the "American Rule," the prevailing party in a civil action is generally expected to cover its own attorneys' fees,[190] while an award of costs is generally issued at the discretion of the trial court.[191] There is a "bad faith" exception to the American Rule under which courts may award attorneys' fees for certain conduct, including "where parties have unnecessarily prolonged or delayed litigation, falsified records or knowingly asserted frivolous claims."[192] "The bad faith exception is applied in 'extraordinary circumstances' as a tool to deter abusive litigation and to protect the integrity of the judicial process."[193]

Although "[t]here is no single standard of bad faith that justifies an award of attorneys' fees—whether a party's conduct warrants fee shifting under the bad faith exception is a fact-intensive inquiry."[194] A claimant must "demonstrate by clear evidence that the party against whom fees are sought acted in bad faith" and "Delaware courts have declined to engage in fee shifting when the evidence of bad faith was less than clear."[195] Moreover, the conduct alleged "must derive from either the commencement of an action in bad faith or bad faith conduct taken during litigation, and not from conduct that gave rise to the underlying cause of action."[196] Fees are only awarded where conduct is "egregious."[197]

---

[190] *In re Delaware Pub. Sch. Litig.*, 2024 WL 332738, at *7–8 (Del. Jan. 30, 2024).
[191] MTD at 27 (citing 10 *Del. C.* § 5101; Super. Ct. Civ. R. 54(d); *Bishop v. Progressive Direct Ins. Co.*, 2019 WL 2009331, at *1 (Del. Super. May 3, 2019)).
[192] *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998) (internal citations omitted).
[193] *Montgomery Cellular Holding Co. v. Dobler*, 880 A.2d 206, 227 (Del. 2005) (quoting *Johnston,* 720 A.2d at 546).
[194] *Auriga Cap. Corp. v. Gatz Properties*, 40 A.3d 839, 880–81 (Del. Ch. 2012), *judgment entered sub nom. Auriga Cap. Corp. v. Gatz Properties, LLC* (Del. Ch. 2012), *aff'd*, 59 A.3d 1206 (Del. 2012)).
[195] *Kuratle Contracting, Inc. v. Linden Green Condo., Ass'n*, 2014 WL 5391291, at *11-12 (Del. Super. Oct. 22, 2014); *see also E.I. du Pont de Nemours & Co. v. Medtronic Vascular, Inc.*, 2013 WL 1792824, at *2 (Del. Super. Apr. 24, 2013), *aff'd sub nom. E.I. Du Pont Nemours & Co. v. Medtronic Vascular, Inc.*, 77 A.3d 271 (Del. 2013) (internal citation omitted) ("Where there is a 'colorable basis' for a claim, the award of attorneys' fees and costs is unwarranted.").
[196] *RBC Cap. Markets, LLC v. Jervis*, 129 A.3d 816, 877 (Del. 2015).
[197] *Gulf Aviation Servs. Grp. WLL v. Wilmington Tr. Co.*, 2023 WL 9118772, at *17 (Del. Super. Dec. 29, 2023).

Defendants contend that fee shifting is not a cause of action but an "extraordinary remedy" that is unsupported by Mr. Schatzman's "conclusory" allegations.[198] Defendants argue that Mr. Schatzman has failed to justify fee shifting, both by failing to allege specific "egregious" conduct warranting an award of fees, and by failing to prevail in the action.[199]

As a preliminary matter, Defendants' contention that "fee shifting is a remedy, not an independent cause of action" may overstate the law.[200] The Court's experience is that parties do not generally have a separate cause of action for attorneys' fee. However, a party is not "disallowed from seeking fee-shifting in the initial action."[201] Simply put, the claim may be brought even when it is dependent on the outcome of the action.[202] Mr. Schatzman is therefore permitted to state a claim for fee shifting in his Complaint.

Further, Mr. Schatzman responds that Defendants are incorrect and that the Court *can* award fees based on conduct underlying the dispute.[203] Indeed, in *Gulf Aviation Services Group v. Wilmington Trust*, this Court noted that:

> Delaware generally follows the American Rule, which provides that litigants are responsible for their own litigation costs. But Delaware law recognizes that exceptions to that rule may be warranted in extraordinary cases, where, for example, a party's prelitigation conduct is so egregious that it warrants fees as a form of damages.[204]

Mr. Schatzman argues that his case is the "extraordinary" example that warrants an award of fees.[205] Mr. Schatzman claims that, according to the Delaware Trial Handbook, there is also a "bad faith exception to the American Rule in those cases where a party brings, or is forced to

---

[198] MTD at 29.
[199] *Id.*; *see also* Reply at 22 (noting that the cases Mr. Schatzman cites indicate fee shifting is a remedy only because those courts only considered fees *after* the trial court had made its findings).
[200] Reply at 22.
[201] *Urvan v. AMMO, Inc.*, 2024 WL 863688, at *23 (Del. Ch. Feb. 27, 2024).
[202] *Id.* n.264 (collecting authorities).
[203] Opp'n at 32.
[204] *Gulf Aviation Servs.,* 2023 WL 9118772, at *17.
[205] Opp'n at 32-33.

bring, an action due to the bad faith of the defendant."[206]  Mr. Schatzman contends that if the facts as he has alleged them "are proven at trial the circumstances constitute one of those 'extraordinary cases' that support[] an award of attorney's fees."[207]

Defendants argue that Mr. Schatzman "simply alleges that his termination in and of itself is enough to meet the standard for egregious prelitigation conduct."[208]  Yet Mr. Schatzman actually contends that "Defendants wrongfully terminated his employment based on fictitious grounds for the purpose of depriving him of benefits that he had worked for years to obtain."[209]

As noted above, Mr. Schatzman has pled facts adequate to survive a motion to dismiss with respect to his claims for breach of the implied covenant in Count III and Mr. Peet's alleged tortious interference in Count IV.  For the same reasons those claims survive a motion to dismiss, Mr. Schatzman's "fact-intensive" claim for fee-shifting should proceed.  While Mr. Schatzman may ultimately be unable to prove the egregious conduct necessary to award fees, his allegations of that conduct are sufficiently pled to survive dismissal.

Therefore, the Motion, as to Count VII, is **DENIED**.

---

[206] *Id.* at 33 (citing Delaware Trial Handbook, § 28:11, *Attorney's Fees*, at 494-95 (1994) ("Bad faith may be shown where a defendant has forced plaintiff to bring a legal claim that knows was valid.").
[207] *Id.* at 33-34.
[208] Reply at 22.
[209] Opp'n at 33.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion as to Count I, Count II, Count V, and Count VI; and **DENIES** the Motion as to Count III, Count IV, and Count VII.

**IT IS SO ORDERED.**

September 20, 2024
Wilmington, Delaware


/s/ Eric M. Davis
Eric M. Davis, Judge


cc:    File&ServeXpress